THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| RICHARD WHITE, | |
| Plaintiff, | Case No. 1:12-CV-00117-DS |
| vs. | |
| NUCOR CORPORATION, a Delaware corporation, d/b/a VULCRAFT, | MEMORANDUM DECISION AND ORDER |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.    INTRODUCTION

Defendant Nucor Corporation moves for summary judgment on all claims brought by Plaintiff Richard White.

In 2005, Mr. Richard White, a welder for Vulcraft-Utah (a subsidiary of Nucor Corporation), "injured his back on the job." Pl.'s Mot. Opp'n at vii. In May 2008, Mr. White underwent back surgery to correct the problem and "took six . . . weeks paid sick leave." Pl.'s Compl. at 4. At the end of the six weeks, he wasn't healthy enough to return to work, and so "he applied for and received Long Term Disability . . . benefits through Nucor. He qualified for LTD benefits for a period of up to fifteen . . . months, from May 2008 (the date of his surgery) until August 2009." Pl.'s Compl. at 4.

In March 2009, Mr. White underwent a second back surgery to correct problems resulting from the first surgery; the second surgery left him with "permanent and substantial impairment of his back, including fusion of several discs within his lumbar spine." Pl.'s Compl. at 5. "His disability substantially impairs his musculoskeletal system, as well as his ability to lift, stand,

1

walk, twist, bend, and sit. He also suffers substantial impairment to his ability to sleep and chronic pain as a result of his condition." Pl.'s Compl. at 5.

By April 22, 2009, Mr. White was still in very bad physical condition as a result of his surgeries; he "was then unable to lift over 15 pounds, and he was unable to sit, stand, or walk for more than brief periods of time. Further, he was unable to engage in repetitive twisting and bending." Pl.'s Compl. at 5. He attempted to report to work for light duty on May 14, 2009, but was sent home by his supervisor, who "told him that there was no light duty available." Pl.'s Compl. at 6. The next day, May 15, 2009, Mr. White was terminated due to his disability. Pl.'s Compl. at 6.

"On May 18, 2009, Mr. White called Nucor's CEO, Dan Dameco, to complain" about his treatment, and Nucor reinstated Mr. White to his position, giving him 12 additional weeks of medical leave, which would expire on August 7, 2009. Pl.'s Compl. at 6. Mr. White, throughout this time, made efforts to be transferred to a different position at Nucor or to otherwise seek accommodation, but his requests were denied. Pl.'s Compl. at 8. On July 28, 2009, Nucor sent Mr. White a letter stating "that unless he was cleared by his doctor to perform all essential functions of his job by August 7, 2009, all available leave would expire and he would be terminated." Pl.'s Compl. at 9.

Beginning in November 2008 (during the same time-frame as his recovery and attempts to return to work), Mr. White applied for Social Security Disability Income ("SSDI") benefits. He was eventually determined by the Social Security Administration ("SSA") to have been disabled since May 30, 2008, for the purposes of SSDI benefits. Def.'s Mot. Summ. J. at viii.

After being terminated by Nucor on August 7, 2008, Mr. White filed complaints with the Utah Labor Commission and the U.S. Equal Employment Opportunity Commission. On

February 28, 2012, the EEOC issued Mr. White a Notice of Right to Sue. Pl.'s Compl, Ex. B. This timely litigation followed. Defendant Nucor Corporation now moves for summary judgment on all claims brought by Plaintiff Richard White.

## II.     SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each of claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In considering whether to grant a motion for summary judgment, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). Furthermore, although the motion for summary judgment before the Court comes from the defendant Nucor, Fed. R. Civ. P. 56(f) allows the district court to grant summary judgment for a nonmovant. Specifically,

> [a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

## III.     DISCUSSION

### A.     STATUTORY FRAMEWORK OF AMERICANS WITH DISABILITIES ACT, AS AMENDED (ADAA)

The Americans with Disabilities Act (as Amended) ("ADAA"), 42 U.S.C. § 12112 et seq., prohibits certain employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees". 42 U.S.C. § 12112(a). By statutory definition, disability discrimination includes "not making reasonable accommodations to the

known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee," unless the required accommodation "would impose an undue hardship" on the business. 42 U.S.C. § 12112(b)(5)(A). The statute expressly defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Reasonable accommodation may include (but is not limited to):

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition of modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(A–B). Additionally, "undue hardship" is "an action requiring significant difficulty or expense, when considered in light of" specific factors set forth in the statute, which are:

> (i) the nature and cost of the accommodation needed under [the ADAA];
>
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10). The ADAA also prohibits retaliation against any individual who "has opposed any act or practice [illegal under the ADAA]." 42 U.S.C. § 12203(a).

B.   FIRST CLAIM – DISABILITY DISCRIMINATION IN VIOLATION OF ADAA

For Mr. White's first discrimination claim to survive summary judgment, he must produce evidence tending to "show that when his employment with [Nucor] terminated, (1) he was a disabled person as defined by the statute; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was fired because of his disability." *Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) (internal quotations and brackets omitted), *quoting Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011). "It is . . . incumbent upon [Mr. White] at the summary-judgment phase to 'raise a genuine issue of material fact on each element of his prima facie case.'" *Hawkins*, 778 F.3d at 883, *quoting Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003).

   *1.   Disabled person as defined by the statute*

Both parties agree that Mr. White is a disabled person under the ADAA.[1] Def. Mot. Summ. J. at xii, xvii–xxiii; Pl.'s Mem. Opp'n at vii–ix, xxxiii–xxxvi. In order "to secure the just, speedy, and inexpensive determination" of this case, Fed. R. Civ. P. 1, the Court will grant summary judgment to Mr. White on this portion of his claims, subject to the notice and response-time requirements of Fed. R. Civ. P. 56(f)(1).

---

[1] "Disability means, with respect to an individual[,] . . . [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual". 29 C.F.R. § 1630.2(g).

"Physical or mental impairment means . . . [a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal". 29 C.F.R. § 1630.2(h)(1).

"Major life activities include, but are not limited to . . . [c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working". 29 C.F.R. § 1630.2(i)(1).

### 2. *Qualified, with or without reasonable accommodation, to perform the essential functions of his job*

#### a. **Lifting fifty pounds or more an "essential function" of the welder position**

Mr. White represented to the SSA that he "frequently" (comprising one-third to two-third of each workday) lifted fifty pounds or more as a welder at Nucor. Def.'s Mot. Summ. J., Ex. J at 3 ("Disability Report-Adult, Form SSA-3368, Nov. 12, 2008"); Def.'s Mot. Summ. J., Ex. L at 5 ("Work History Report, Form SSA-3369-BK, Dec. 29, 2008"). Although these specific SSA forms did not include declarations under penalty of perjury, it is a felony to make false statements in pursuit of SSDI benefits, as Nucor's reply points out. 42 U.S.C. § 408(a), *cited in* Def.'s Reply at xxiv. Additionally, on December 9, 2008, Mr. White "affirm[ed] that all information [he gave] in connection with [his] claim [was] true," which would act as an affirmation for the information on at least the November 12, 2008 SSA form submission. Def.'s Mot. Summ. J., Ex. K at 2 ("Application Summary for Disability Insurance Benefits, Dec. 9, 2008").

Although Mr. White's application for SSDI benefits and his evidence in support of the application for those benefits neither bar him from ultimately prevailing on this ADAA claim nor create a negative general presumption regarding the merits of his ADAA claims, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), his prior statements about the welder position's lifting requirements do estopp him from now claiming that lifting more than fifty pounds is not an essential function of the position.[2] *See Myers v. Knight Protective Serv. Inc.*, 774 F.3d 1246

---

[2] Mr. White claims that the collateral source rule bars Nucor from introducing evidence showing application for, or receipt of, SSDI benefits. However, Nucor has not introduced the evidence from Mr. White's SSDI applications to show that some of his damages have been mitigated (which presumably would be an impermissible use under the collateral source rule), but to show inconsistencies between Mr. White's representations to the SSA and his

(10th Cir. 2014); *Veneziano v. Long Island Pipe Fabrication & Supply*, 79 F.App'x 506, 509–510 (3rd Cir. 2003) (unpublished) (affirming the district court's decision to "appl[y] judicial estoppel" to prevent the ADA plaintiff from asserting that heavy lifting was not an essential function of his job, "since on a Disability Report submitted to the Social Security Administration Veneziano indicated that for one-third to two-thirds of the work day he lifted more than 50 pounds"). Therefore, the Court will grant summary judgment for Nucor on this issue, and will hold that lifting 50 pounds is an essential function of the welder position at Nucor. Mr. White is therefore judicially estopped from arguing otherwise in this litigation.

### b. Reasonable accommodation

Although some courts have held that it is not reasonable, as a matter of law, to modify lifting requirements to accommodate a disabled employee,[3] a rational jury could find in this

---

representations to this Court now. Such use is permissible and is in no way barred by the collateral source rule. *See, e.g., Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795 (1999).

[3] "[Plaintiff] claims [defendant] should have provided him with assistance in the occasional heavy lifting required of his position. Because this court concludes that [plaintiff's job] requires heavy lifting, the only accommodation that would enable him to perform his job would require another employee to accompany him… [T]his is an unreasonable accommodation as a matter of law." *Merrell v. ICEE-USA Corp.*, 242 F.3d 389, 2000 WL 1854117, at *5 (10th Cir. 2000) (unpublished), *quoted in* Def.'s Reply at 10. The holding in *Merrell*, however, is not controlling in the instant case because the facts in *Merrell* are different in important ways.

*Merrell* involved an injured worker who was a service technician for ICEE-USA in Salt Lake City, Utah. His service area covered "parts of Utah, Idaho, and Wyoming". His job at the time of his requests for accommodation was "service representative," which meant that he "managed the service area, delegated work responsibilities, installed and repaired equipment, and engaged in other administrative tasks such as ordering and receiving. During Merrell's tenure as service representative, he continued to maintain equipment and service accounts in the three-state service area." *Merrell*, 2000 WL 1854117 at *1. Like Mr. White in the instant case, Mr. Merrell had lifting restrictions placed on him by his doctor, *id.*, and the essential functions of his job included heavy lifting. *Id.* at *3. However, Mr. Merrell's job (a service representative delivering and servicing ICEE equipment in three states) was significantly more mobile and necessarily independent than Mr. White's. Since Mr. Merrell drove a truck to customer locations in three states and serviced the ICEE equipment at customer locations, "[t]he district court found that the only accommodation which would enable Merrell to perform his job would require a second employee to ride with him in order to do the lifting." *Id.* at *3.

Viewing the facts in the instant case in the light most favorable to Mr. White, this presents a substantial difference. In *Merrell*, another employee would literally have to "accompany" Mr. Merrell to his service locations in three different states; the Court found that this would "create[] an undue burden on ICEE," *id.* at *5, presumably because ICEE would then have to assign two employees (Mr. Merrell and another) to do the work that a single employee could otherwise perform. On the other hand, (again, viewing the facts in the light most favorable to Mr. White) no such loss of efficiency has been undisputedly established in the instant case. Mr. White's requested accommodation doesn't involve having another employee drive with him to another state to service equipment; rather, he only alleges that employees already working in the same facility with him could (and, in his work

7

narrow case, because of the unique circumstances of the Vulcraft-Utah plant and equipment allegedly available to welders at Nucor, that Mr. White could have been reasonably accommodated by being allowed to utilize the cranes and lifting machinery that apparently are always available to welders, or by being assisted by other welders. Mr. White has produced evidence that there was equipment available to lift with heavy loads, and that the company encouraged frequent use of such equipment[4]; this evidence is sufficient to create a genuine dispute of material fact on whether accommodation was available. Additionally, as Plaintiff's Motion in Opposition points out, Nucor's 100% release policy (requiring "employees who have been out on furlough or injury/disability" to have a full medical release before being allowed to return to work) could create an inference that Nucor may not have taken "any time to . . . accommodate [Mr. White's] lifting restrictions" as required by the ADAA. Pl.'s Mot. Opp'n at xxix. Additionally, Mr. Moffitt's[5] statements raise a genuine issue of material fact as to whether, in this case, allowing other workers to help Mr. White would have been a reasonable accommodation, based on past practice at Nucor's Vulcraft-Utah plant. Moffitt Decl., ¶¶ 14–18. Nucor's own supervisors also stated that employees often help each other lift heavy loads.[6] It is thus for the jury to determine whether it would be an undue burden on Nucor for Mr. White to have required lifting help (whether from mechanical aids, or from a coworker) more often than a welder with no such restrictions.

---

experience, did) help him with any heavy lifts. Because of these essential differences in the facts between *Merrell* and the instant case, *Merrell* does not control the outcome here.

[4] Walker Dep. 86:5–87:25; James Dep. 231:9–12; Matthes Dep. 123:3–25; Hale Dep. 82:1–86:25; Moffitt Decl. ¶¶ 23–27; Pl.'s Mot. Opp'n, Ex. 9–11.

[5] Mr. Duste Moffitt is also a welder at Vulcraft-Utah (Nucor), and filed a declaration in support of Mr. White's case, which was included as Pl.'s Reply, Ex. 8.

[6] Matthes Dep. 63:1–23 (stating that Nucor encourages employees to work together, use equipment for heavy lifting, and to seek help from others when needed); Hale Dep. 63:1–64:12 (stating that Nucor practice was for welders to "work together as a team," and that welders would help each other even if a welder asked for help lifting a 25-pound weight); White Dep. 24:19–25:3; Pl.'s Reply, Ex. 9, 10, 11, 24, 28, 29 (Nucor internal company materials recommending that welders assist each other with heavy lifting).

Nucor correctly asserts that "an accommodation that eliminates the essential functions of the job is not reasonable." Def.'s Mot. Summ. J. at 14, *citing Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114 (10th Cir. 2004); *Wells v. Shalala*, 228 F.3d 1137, 1145 (10th Cir. 2000); *Merrell v. ICEE-USA Corp.*, 242 F.3d 389, 2000 WL 1854117 at *5 (10th Cir. 2000) (unpublished); *Davidson v. AOL*, 337 F.3d 1179, 1192 (10th Cir. 2003); *Frazier v. Simmons*, 254 F.3d 1247, 1261 (10th Cir. 2001). However, given the evidence that Mr. White has produced in support of his allegation that he could perform the essential functions of his job with already-existing accommodations ("team-lifting" and equipment such as cranes), the jury must decide whether such accommodations would act in this case to eliminate the essential function of the welder position. It cannot be true, as a matter of law, that any accommodation that assists an employee in fulfilling an essential function acts to "eliminate" that essential function; if so, all accommodations would be unreasonable.

Viewing the alleged facts in the light most favorable to Mr. White, therefore, summary judgment is inappropriate on this element of the discrimination claim. Based on the evidence produced thus far, a reasonable jury could find in favor of Mr. White on this portion of the claim. Therefore, the determination of whether specific accommodations were reasonable, and whether Mr. White could have performed the essential functions of the welder position if so accommodated, must be left to the jury. The Court declines to grant summary judgment on this issue.

### c. Other positions at Nucor

There is a genuine dispute of material fact here. While Nucor's management offered consistent testimony with regard to the lack of open positions elsewhere at Nucor,[7] Nucor incorrectly asserts that, given the testimony of Nucor's management, Mr. Moffit's testimony[8] is insufficient to create a genuine dispute of material fact on this point, and therefore insufficient to defeat summary judgment. Pl.'s Reply at 11, n.39. At summary judgment, the Court may not weigh evidence as Nucor suggests. Mr. White has fulfilled the requirement in Fed. R. Civ. P. 56(c)(1) by supporting, with evidence, the assertion that this fact (whether other open positions existed) is genuinely disputed by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Additionally, Mr. Moffit's declaration[9] is "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). Nucor claims that Mr. Moffitt cannot testify on such matters because Mr. Moffitt "never has been a member of management, and he was not involved in the filling of positions." Def.'s Reply at 11 n.39. However, Mr. Moffitt (by virtue of working full-time in the same facility, Moffitt Decl. ¶ 1, 3–4, 6) can be expected to be aware when a new employee is hired and to be aware of job openings at the plant. Since Nucor's managers testify that there were no open positions, and Mr. Moffitt testifies from personal experience that there were open positions, summary judgment on this issue would require a weighing of the evidence and an assessment of the credibility of the

---

[7] Pl. Dep., 28:2–21; Walker Dep., 68:12–22, 69:1–25; Matthes Dep., 138:1–140:25; James Dep., 213:12–18; Hale Dep., 144:13–147:17.
[8] Moffitt Decl., ¶ 45.
[9] "I am aware of Inspector positions that have opened up just recently. In some instances, those open positions have been filled with Nucor employees. The inspector position itself has occasional turn-over and becomes vacant from time to time. In my recollection an inspector was hired near around the time Richard was terminated." Moffit Decl. ¶ 45.

various witnesses—both of which are improper during summary judgment proceedings. This issue, therefore, must be left to the jury's determination.[10]

### 3. *Fired because of disability*

Again, as in the first element of the ADAA discrimination claim, there is no genuine dispute as to whether Mr. White was fired because of his disability. Mr. White has produced "direct evidence" of discrimination—the termination letter that stated that he was being terminated because his doctor had not released him to perform the lifting requirements of the welder position. Pl.'s Mot. Opp'n, Ex. 14 ("Termination Ltr., dated 7/28/09"). As such, the Court intends to grant summary judgment on the third element of the discrimination claim as well. In order "to secure the just, speedy, and inexpensive determination" of this case, Fed. R. Civ. P. 1, the Court will grant summary judgment to Mr. White on this element of his claims, subject to the notice and response-time requirements of Fed. R. Civ. P. 56(f)(1).

The only element of the failure-to-accommodate claim triable to the jury will be whether Mr. White was qualified, with or without reasonable accommodation, to perform the essential functions of the welder or other positions.

C. SECOND CLAIM – FAILURE TO ACCOMMODATE DISABILITY AND ENGAGE IN THE INTERACTIVE PROCESS, AS REQUIRED BY THE ADAA

Mr. White and Nucor disagree about the analytical framework for deciding this claim. Nucor points to the *Allen*[11] elements, which are: (1) that plaintiff is a "qualified individual" under

---

[10] It is worth noting that Nucor correctly points out that "the law is clear . . . an employer is not required to create a position for a disabled employee." Def.'s Reply at 11, *citing Smith v. Midland Brake*, 180 F.3d 1154, 1170 (10th Cir. 1999).

[11] *Allen v. SouthCrest Hosp.*, 455 F.App'x 827 (10th Cir. 2011) (unpublished).

42 U.S.C. § 12111(8); (2) that the defendant failed to reasonably accommodate the plaintiff's disability as required by 42 U.S.C. § 12112(b)(5)(A); after which, (3) the *McDonnell-Douglas*[12] burden shift gives the employer the opportunity to present evidence rebutting the first two claims. Pl.'s Mot. Summ. J. at xxv–xxvii.

On the other hand, Mr. White asserts that the appropriate framework for review comes from *Spielman v. Blue Cross & Blue Shield of Kan.*,[13] which includes: (1) the individual had a disability within the meaning of the statute; (2) the employer had notice of the disability; (3) with reasonable accommodation, the individual could perform the essential functions of the position, and (4) the employer refused to make such accommodations. Pl.'s Mot. Opp'n at cvi–cvii.

After consideration, the Court has decided to use the *Allen* test, for the reasons stated in Nucor's reply. The *Allen* test is more recent than the *Spielman* test, which is particularly important in this case because *Allen* was decided after the 2009 amendments to the ADA (*Spielman* predates the 2009 amendments). Additionally, as Nucor's reply points out, the tests are not mutually exclusive. Elements 1–3 of the *Spielman* test incorporate much of the same analysis as the "qualified individual" analysis in the *Allen* test. The only somewhat-meaningful difference between the two is that the *Allen* test specifically includes, as the third element of the test, an opportunity for the employer to present evidence rebutting the individual's claims. Although there is no such separate step in *Spielman*, obviously the employer would be allowed to present evidence to rebut the individual's evidence and claims with regard to each element. That the *Allen* test, therefore, explicitly includes a separate step for employer rebuttal, is a distinction without a difference. For these reasons, the Court will use the *Allen* test. An analysis of Nucor's summary judgment claims on each element of the *Allen* test follows herein:

---

[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[13] 33 F.App'x 439 (10th Cir. 2002) (unpublished).

1. *Was Mr. White a qualified individual under the ADAA?*

This is, in all respects, exactly the same inquiry undertaken in Mr. White's discrimination claim, discussed above.[14] As in the first claim, the Court will hold—subject to the notice and response requirements of Fed. R. Civ. P. 56(f)—that Mr. White was "disabled" under the ADAA, and will reserve for the jury's determination the issue of whether Mr. White could have, with or without reasonable accommodation, fulfilled the welder's functions, or those of another position at Nucor. Additionally, the Court's summary judgment determination that lifting fifty pounds or more was an essential function of the welder position will carry over here; Mr. White—having asserted under penalty of law to the SSA that he frequently lifted fifty pounds or more as a welder at Nucor—is judicially estopped from claiming otherwise in this litigation.

2. *Did Nucor fail to reasonably accommodate Mr. White's disability, as required under the ADAA?*

As in the second element of the discrimination claim,[15] there is here a genuine dispute of material fact about which accommodations would have been reasonable, and whether Nucor participated in the required "interactive process" in good faith. Therefore, the ultimate factual judgments of what happened must be left to the jury.

3. *Does Nucor have any evidence tending to rebut Mr. White's claims on the first two elements?*

Here, as in the discrimination claim, there are genuine disputes of material facts with regards to whether Mr. White was a qualified individual[16] under the ADAA, and whether there

---

[14] *See* Part III.B.1, *supra*.
[15] *See* Part III.B.2, *supra*.
[16] There is no genuine dispute as to whether Mr. White was disabled under the ADAA, *see* Part II.1, *supra*, but to be an ADAA "qualified individual" also required that the individual be able to perform the essential functions of the job with or without reasonable accommodations. On this latter point, there is a genuine dispute of material fact. *See* Part II.2, *supra*.

were reasonable accommodations, if any, that would have allowed him to fulfill the welder position. The Court, therefore, declines to grant summary judgment on this element.

### D. THIRD CLAIM – RETALIATION

On this, as in the failure-to-accommodate claim, the parties disagree in part about the analytical framework that should be used. Again, as in the failure-to-accommodate claim, the variations between the proposed approaches (insofar as it relates to the disputed prima facie element of the claim) represent a mere distinction without a difference.

Nucor asserts that the retaliation claim is to be analyzed as follows: (1) to establish a prima facie case of retaliation, Mr. White must establish a causal connection between the protected conduct and his termination; after which (2) under *McDonnell-Douglas*,[17] the burden shifts to Nucor to present evidence rebutting Mr. White's claims. Pl.'s Mot. Summ. J. at xxvii–xxviii.

Mr. White asserts that to establish a prima facie case of retaliation, he must show: (1) he engaged in protected activity; (2) he suffered a materially adverse action by Nucor subsequent to or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the adverse action. Additionally, Mr. White asserts that the *McDonnell-Douglas* shifting scheme does not apply, because Mr. White claims that there is "direct evidence" of retaliation.

However, the evidence produced by Mr. White (that he was terminated for his disability) is not direct evidence of retaliation—i.e., that he was terminated for attempting to engage in the interactive process of accommodation or for opposing actions that are illegal under the ADAA. Mr. White hasn't produced any evidence (other than temporal proximity and supervisors' off-

---

[17] *McDonnell-Douglas* is actually a Title VII (Civil Rights Act of 1964) case, but Nucor correctly points out that courts in the 10th Circuit have applied Title VII discrimination and retaliation analysis to ADAA cases. Def.'s Mot. Summ. J. at 22.

hand comments) that he was terminated for attempting to obtain accommodation—only direct evidence that he was terminated for his disability. Therefore, the *McDonnell-Douglas* burden-shifting scheme applies, and the Court will use Nucor's framework to analyze Mr. White's retaliation claim.

Applying the *McDonnell-Douglas* framework, Mr. White has proffered sufficient evidence to survive summary judgment on the first element of the retaliation claim (a causal nexus[18]), and, similarly, Nucor has produced evidence rebutting the retaliation claim that is sufficient to establish a genuine dispute of material fact.[19] To survive summary judgment under the *McDonnel-Douglas* burden-shifting, however, Mr. White must proffer evidence to rebut Nucor's express reasons for termination (Mr. White's disability); the evidence must be such that a reasonable jury could find in Mr. White's favor (viewing the facts most favorably to Mr. White). Under the *McDonnell-Douglas* shifting analysis,

> A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. Sep. 4, 2015) (internal quotation marks omitted), *quoting Andersen v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (*quoting Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). While temporal

---

[18] This can be established merely by temporal proximity—for example, viewed in the light most favorable to Mr. White, the one month between Mr. White's request for accommodation of his permanent disability and Nucor's August 7, 2008 termination of Mr. White is a sufficiently tight temporal connection for Mr. White's claim to survive summary judgment on the "causal nexus" element. This is true for time gaps up to a month and a half between alleged protected conduct and alleged retaliation. *See, e.g., Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013), *citing Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) *and Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

[19] Nucor asserts that Mr. White was terminated not for asserting ADAA rights or for requesting accommodations, but for being unable to fulfill the essential functions of the welder position. Viewing this evidence in the light most favorable to Nucor (since Nucor would be harmed if summary judgment were granted to Mr. White on this element of the retaliation claim), a reasonable jury could certainly find in Nucor's favor, and therefore summary judgment for Mr. White is inappropriate as well on this second element.

proximity evidence alone is sufficient for the first element of a retaliation claim (prima facie case) to survive summary judgment, evidence of temporal proximity is not sufficient, without more, to sustain this third element past summary judgment. *Zisumbo*, 801 F.3d at 1200 ("Although evidence of temporal proximity between the protected activity and the alleged adverse employment action alone is insufficient to show pretext, it can support a finding of pretext when combined with other evidence of pretext.").

To rebut Nucor's stated motivations for the termination, Mr. White points to Mr. Walker's comments to him that he wouldn't pay Mr. White "to stand around and do nothing" and that he had been on medical leave "too long."[20] Pl.'s Mot. Opp'n at lxxxvii. Given the facts of this case—that Mr. White was terminated in May 2008, reinstated after complaining to the Nucor CEO, and then terminated again in August 2008—a reasonable jury could find that these comments were evidence of Mr. Walker's[21] retaliatory motives. Therefore, because a genuine issue of material fact exists on the retaliation claim as a whole, summary judgment for Nucor is inappropriate. The Court declines to grant summary judgment for Nucor on this element of the claim.

## IV. CONCLUSION

For the reasons stated above, the Court hereby grants summary judgment to Nucor on the following element: that Mr. White is judicially estopped from asserting that lifting 50 pounds or more is not an essential function of the welder position. The Court finds that lifting 50 pounds or more is an essential function of the welder position.

---

[20] Mr. Walker's comment, "How long will your back hold out this time?", Pl.'s Compl. at 7, is irrelevant to the retaliation analysis because this comment goes to possible bias because of disability, not to possible retaliation for protected ADA activity.

[21] Since Mr. Walker was the ultimate decision-maker in the termination, Walker Dep. 196:1–6, it is Mr. Walker's attitudes that are relevant in presenting evidence on this element of the retaliation claim. *See, e.g., Zisumbo*, 801 F.3d at 1200 ("The focus of a . . . pretext analysis is on the decision-makers' motivation."), *citing Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1144 (10th Cir. 2009) *and Univ. of Tex. Southw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

The Court also grants summary judgment for Mr. White on two issues: (1) that Mr. White is "disabled" under the ADAA's definition, and (2) that he was fired because of his disability. Since Mr. White was the nonmovant in the instant motion, Fed. R. Civ. P. 56(f)(1) requires that the Court "giv[e] notice [of its decision to grant summary judgment for Mr. White] and a reasonable time to respond." If Nucor fails to object to this decision by December 30, 2015,[22] the Court's determination on these two issues will become final without further notice to the parties.

Finally, the Court declines to grant summary judgment to either party on the following elements of Mr. White's claims: (1) whether Mr. White could have performed the welder position with reasonable accommodations; (2) whether Nucor failed to reasonably accommodate Mr. White; (3) whether, regarding reasonable accommodation, there were any open positions to which Nucor could have moved Mr. White to accommodate his disability; and (4) whether Mr. White's termination was prohibited retaliation under the ADAA.

IT IS SO ORDERED.

DATED this 30th day of November, 2015.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[22] This is the same amount of time that would be allowed under DUCivR 7-1(b)(3)(A) for Nucor to respond to a motion for summary judgment by Mr. White. The Court considers this time period for response to be amply reasonable.